# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| EDWARD "COACH" WEINHAUS, ) | |
| ) | Case No. 4:22-cv-00115-CDP |
| Plaintiff, ) | |
| VS. ) | |
| ) | |
| ALABSERIES.COM et al. ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE [FILED UNDER SEAL]

Defendants' Response takes nine pages to explain why they repudiated the settlement agreement and then proceeds to use this an opportunity to smear Plaintiff (ironically this was a defamation case). This brief will not engage in a tit for tat and instead focus on the settlement obligations and the breach.

Defendants' actions are at issue here. They repudiated the contract, acted in bad faith, and now present to the Court Confidential Settlement discussions which, rather than moot the issue, demonstrate why the Court should act to enforce the Settlement or otherwise reform it.[1]

---

[1] Defendants' Exhibit 4 involved attempts to settle the dispute and isn't appropriate for submission. Nonetheless, it cannot moot this action.

1

1. **Defendants Admitted Materially Breaching and Demonstrating Harm Based On Their Bad Faith**

The Settlement's purpose related to the ▮▮▮▮▮▮ states in its opening clause:



Defendants don't acknowledge their obligation to consider Plaintiff's ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ stating only they weren't producing any more podcasts. The way Defendants tell it, the Court would never know the promise for which Plaintiff had bargained – Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiff expected good faith as infused in every agreement. Defendants delivered the opposite.

Defendants ask this Court to use Defendants' ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Plaintiff entrusted Defendants as an excuse to disavow their obligations ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

They rely on *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 185 (Mo. 2015) for this contention. In that case, however, the Defendants' express acts were *allowed* by the contract. *Id.* Defendants ask this Court to allow a requested reformation term – *infra § 3*, ▮▮▮▮▮▮▮▮▮▮▮

2

████████████████████████████████████████████████ nor produce the materials in their Exhibit 4.

The difference here is crucial. Defendants rely on their ultimate ██████ ███████████ to excuse: 1) a required ████████████████████; 2) Plaintiff's right ███████████████; and 3) ████████████████████████. Missouri law calls this type of behavior *bad faith*. *Koger v. Hartford Life Ins. Co.*, ████████████████████████████████████████ S.W.2d 466, 473 (Mo. App. 1986) (exercising judgment "conferred by the express ████████████████████████████████████████ ████████████████████████████████████████ ████).

Defendants' bad faith approach to the Settlement is evident from their own ████████████████████████████████████████ ███████████. They also declared it publicly. See Reply Exh. 1 ("AllahLiker" is Defendant ████, "Johnny Bigballs" is ████████ Defendant ████). Next, they tell the Court: ████████████████████████ ██████████████████████████████ That ██████ remember, disavowed making any future episodes ████████████████████. Yet ██ ██████████████

3

After Plaintiff's multiple attempts to reach them, Defendants repudiated any responsibility to ▮▮▮▮ they have now produced for this Court's benefit in Response Exhibit 4. Pl. Memo 3-4 & Ex. 2. It's a 10-page response with another 10 pages of examples, as part of Confidential Settlement discussions[2]. Were their Exhibit 4 in any way valuable, as *they* seem to now ▮▮▮▮ it was only produced *as a result* of this action. Defendants ▮▮▮▮ was a material part of the Settlement.

The Settlement envisioned that feedback had another, specific purpose – to ▮▮▮▮ Plaintiff only agreed to drop the case for the Defendant's execution of *this* promise. Thus, Defendants received the benefit of the bargain – dropping the claims – then made an about face, repudiating their obligations.

Defendants' bad faith is demonstrated by following their logic. They felt they could unilaterally refuse to produce their Exhibit 4 because they had no intention ▮▮▮▮. This is an incredible admission. Plaintiff entered into the Settlement believing and acting in *good faith*. Defendants on the other hand, relying on the Settlement clause granting them final authority as to ▮▮▮▮, used that as license to skip all other obligations. They gave it no ▮▮▮▮ – which was the promise. Defendants excused themselves from

---

[2] Thus, at the very least, Plaintiffs are entitled to ▮▮▮▮ pursuant to the Settlement.

4

████████████████ and all formalities (including their Exhibit 4) *because* they didn't have to ████████████████ as part of the same agreement. That's *bad faith*. *Kroger*, at 412.

Defendants' public statements and their repudiation of the Settlement further show that Defendants have no intent to ████████████████████████████. As their Response includes no promise of ██████████, nor would their bad faith defense convince anyone, Plaintiff is harmed by loss of any ████████████ ██████████. It's even bizarre since the earlier episode won national accolades as one of the 10 best podcast episodes of 2022. (See Slate, https://slate.com/culture/2022/12/best-podcasts-2022-chat-comedy-history-politics.html last visited February 1, 2024). This is a substantial loss to Plaintiff.

Finally, by Defendants' own admission, the entire process was to be concluded in ██████████. Now, if Plaintiff is to gain a full ██████████████████, the delay is measurable and meaningful. The subject of the ██████████ relates to a pressing election. Thus, each and every day of delay affects the ability for this to even matter. See *Chicago City Wire* "Election 2024: Ald. Burke headed behind bars, but Burke's judges [picture of the Hon. Regina Scannicchio] still rule the Cook County bench" story Feb. 2, 2024 (Reply Exh. 2)

https://chicagocitywire.com/stories/654032788-election-2024-ald-burke-headed-behind-bars-but-burke-s-judges-still-rule-the-cook-county-bench last visit 2/2/24.[3]



## 2. Plaintiff Made Extensive Efforts To Resolve The Agreement Prior To Defendants' Repudiation *in toto*

Plaintiff reached out to Defendants multiple times prior to their repudiation of the Settlement. He offered to take Defendant ▮▮▮▮ out to discuss anything in the Settlement. Resp. Ex. 2. When they ignored him, he again reached out. Mot. Ex. 2.

---

[3] Defendants again spend more time sliming Plaintiff than acting in good faith. They call his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Resp. pg. 7. This is precisely the kind of bad faith Defendants are practicing. Under the Settlement Agreement, Plaintiff is allowed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But, to this Court, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If they had been acting in good faith, they would allow him what the Settlement promises, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants are perfectly aware that the company noted in the ▮▮▮▮▮▮ and *Chicago City Wire* share key personnel which is publicly known. Now, as the Court can take judicial notice, the *Chicago City Wire* (and the Record Inc.'s *Cook County Record* which also shares key personnel) is attuned to the exact topic in question – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiff's bargain was the opportunity to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants preferred to ignore Plaintiff, smear him (again), so as to ask the Court excuse their repudiation of the Settlement. As for the ▮▮▮▮▮▮▮▮▮▮▮, the dots have been connected and the story is much deeper. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Neal Edelstein did on his 17-part Podcast Series "The Cooley Account." (The first 20 minutes of Episode 9 and Episode 17 are ▮▮▮▮▮▮▮.) That's what the Settlement was supposed to allow before the Defendants repudiated it.

6

Weeks later they disavowed any responsibility █████████████████████ but offered to produce what later became Exhibit 4 anyway. They even refused to do that after being offered ████████████████.

Defendants have privately and publicly declared they are no longer going to produce episodes. See Reply Exh. 1. As such, Defendants have repudiated the contract, excusing any performance by Plaintiff. *Wayland v. W. Life Indem. Co.*, 166 Mo. App. 221, 233 (1912).

Defendants are asking the Court to hold Plaintiff accountable for demonstrably chasing Defendants to perform, then having the contract privately and publicly repudiated, and then waiting patiently for the partial performance they might have offered. They wonder why Plaintiff didn't tell them they weren't allowed to disband. Had he only done so, they argue, they would come back together █ ████████████████ as a going concern. That is Monday morning quarterbacking.

Even now, as part of their Response, no Defendant has declared under sworn oath that ALABseries is a going concern that will produce more episodes while having publicly declared otherwise. Worse yet, they seem to be needling Plaintiff and this Court's authority, claiming that they will instead start a new, different podcast instead. Reply Exh. 3.

7

The only way to enforce a repudiated agreement by an entity that says it ceases to exist is via this action after Plaintiff's good faith attempts at requesting compliance.

### 3. Plaintiff's Requested Remedy Addresses Defendants' Bad Faith Approach To Their Responsibilities Under The Settlement

The difficulty with Defendants' breach is how to un-ring the bell.

Defendants complain about the remedy requested. The Settlement was reached when Defendants ▮▮▮▮▮▮▮▮ his lawsuit for defamation and business interference based on ▮▮▮▮▮▮▮▮. The promises were broken in bad faith. The Court has multiple judicial remedies available. All parties agree, the Court cannot turn bad faith actors into good ones and that it could re-open the original claims, neither of which is Plaintiff requesting. But Plaintiff only entered into the agreement based on the expectation of good faith.

This Court has the power to reform the settlement agreement based on the situation at hand. "[A]mbiguity is not the only basis for reformation of a written instrument. An equity court's power "to reform an instrument, which by reason of mistake fails to express the intention of the parties, has long been considered unquestionable. Reformation, however, "is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." (citations and quotations omitted). *Singleton v. Singleton*, 659 S.W.3d 336, 342 (Mo. 2023).

Defendants meet all the elements for fraudulent misrepresentation in entering the Settlement by intending to use one clause ▇▇▇▇▇▇▇▇▇▇ to excuse their performance of material parts of the rest of it. *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). As such, contract reformation is appropriate. *Thornburgh v. Warson Vill. Corp.*, 331 S.W.2d 144, 147-48 (Mo. Ct. App. 1960) (citing 76 C.J.S., Reformation of Instruments, Sec. 3, pp. 328, 329). Defendants instead deny this Court's inherent equity powers.

Thus, Plaintiff has two potential solutions that could remedy Defendants' faking compliance with the agreement to ensure ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

a) First, the Court could reform the Settlement to obligate Defendants ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ does meet *their own requirements* as they have broadly suggested in their Exhibit 4[4].

b) Second, alternatively, the Court can recognize that Defendants have no intention of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ allow Plaintiff ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ with the appropriate indemnifications and disclosures relieving them of liability. Given the national accolades Plaintiff received for their first episode, this is likely to accrue benefit to Defendants ▇▇▇▇▇▇▇▇▇▇▇▇▇.

---

[4] Plaintiff has not boiled these down to agreeable standards but foreseeably could do so, subject to Court approval.

9

DATED this 5th day of February, 2024.

                          DICKINSON WRIGHT, PLLC

                          By: s/ *Jeffrey H. Kass*
                                Jeffrey H. Kass, E.D.Mo# 60672
                                1626 Wazee St., Suite 200
                                Denver, CO 80202
                                Tel: (303) 723-8400
                                Fax: (844) 670-6009
                                Email:JKass@dickinson-wright.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February, 2024, a true and correct copy of the foregoing document was served via the courts E-file system which sends electronic transmission to all counsel of record.

                                */s/ Jeffrey H. Kass*
                                Jeffrey H. Kass